## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

| | | |
|---|---|---|
| JAMES NELSON LEWIS, | ) | |
| | ) | |
| Petitioner, | ) | **CASE NO. 7:20CV00421** |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| HAROLD CLARKE, | ) | By:   Hon. Thomas T. Cullen |
| | ) | United States District Judge |
| Respondent. | ) | |

James Nelson Lewis ("Lewis" or "Petitioner"), a Virginia inmate proceeding *pro se*, filed a petition for writ of habeas corpus under 28 U.S.C. § 2254, challenging his 2016 convictions in Pittsylvania County Circuit Court for abduction, aggravated malicious wounding, strangulation, use of a firearm in the commission of abduction, malicious shooting within an occupied building, and shooting from a motor vehicle, for which he is serving an active sentence of 26 years.  As explained more fully below, all of Lewis's habeas claims must be dismissed because the state courts' prior decisions resolving his claims for ineffective assistance of counsel were not contrary to clearly established federal law nor the product of unreasonable factfinding, and his remaining claims were procedurally defaulted under state law.

## I.   Factual Background and Procedural History

Between April 3 and April 6, 2015, a domestic argument escalated into a weekend of terror for Petitioner's wife, Monica ("Monica").  Because of the procedural posture of this case and the nature of Lewis's claims, the court will first summarize the evidence presented at trial, including the testimony of Monica, and the couple's then 13-year-old daughter, Alyssa.  ,

Suspecting his wife of infidelity, Lewis became enraged, demanding to know whom she was seeing and what she was hiding.  He seized her cell phone, reading every text message and questioning every phone number he did not recognize.  Lewis then dumped the contents of cabinets and drawers onto the floor, at one point even cutting the bottom lining off the living room sofa and chair to look inside them.  Lewis said he was going to torture Monica until she told him the truth, and he threatened to kill her.  Over the course of the Easter weekend, Lewis savagely beat his wife.  To boot, he threw large objects at her, including a chair and an amplifier, hitting her in the face and chest.  Monica and Alyssa also testified that Lewis cut Monica with a straight razor, slicing her arms, legs, and back, drawing blood.  He even carved an "A" into the top of one leg.

On Saturday, Lewis wanted to go to the store, so he took Monica with him.  Lewis's friend Skylar drove, and Monica sat in the middle with Lewis in the passenger seat.  Lewis brought a Derringer .22 revolver with him and held it against Monica's leg during the ride.  Monica testified that Lewis said he was going to shoot her in the leg.  At some point, the car hit a bump in the road and the gun fired a bullet through Monica's calf.  She said the entry wound cauterized immediately, but the exit wound was bleeding.  Despite his earlier threats, Monica testified that she did not know if he intended to shoot her or if the gun went off accidentally when the car hit the bump.  After they returned home, Lewis retrieved a shotgun and pointed it at Monica.  She retreated to the master bathroom behind a half-wall, while Lewis sat on the bed with the shotgun pointed at the bathroom.  He fired a shot past Monica's head which went through the bathroom wall.  At one point, Lewis placed the shotgun under his chin, acting like he was going to shoot himself.  When Alyssa came into the bedroom after

hearing the gunshot, Lewis put the shotgun away.  Monica did not try to leave the home during these events because she feared that Lewis would disappear with the children, or much worse.

In the living room, Lewis sat Monica on an ottoman facing the sofa, where Alyssa was sitting.  He used his pistol to fire one shot to the left of Monica's head and one to the right.  Both bullets lodged into the wall to the right of the living room window.  Then, after cutting the shirt off her back, he threw darts into her back, making Alyssa pull the darts out of Monica's back and retrieve the darts that missed so he could throw them again.  Alyssa went to bed early after that because she could not take any more.  Her younger brother, James, Jr., had been hiding in his bedroom most of the weekend, and their eight-month-old baby sister was at Monica's parents' home for the Easter weekend.  Alyssa awoke during the night to hear her mother screaming in the next room.  Monica testified that Lewis was choking her, and just before she thought she would lose consciousness, she was able to kick him off her.  He chased her into the living room, where he again began hitting her and punching her and knocked her to the ground.  As Lewis prepared to strike her with a heavy object, she testified that the look in his eyes terrified her, and she knew if she didn't get out of the house that minute, he would kill her.  She grabbed a guitar and hit him in the abdomen as he was leaning towards her.  Lewis backed up and said he couldn't breathe and needed his inhaler.  At this point, Monica fled the house, barefoot, and ran to a neighbor's trailer down the road for help.  Even though she was not acquainted with the neighbor, the lady took her in and called 911.  After police took Monica's statement, she was transported to a hospital, where she was admitted and remained for two nights.  Trial Tr. vol. 1 at 158–310, 415–473.

Roxanne Terrill, a forensic nurse examiner at Centra Hospitals, testified about Monica's injuries, including identifying numerous photographs.  She documented 106 injuries to Monica, including facial bruising all around her left eye, her jaw, and her chin; abrasions on her scalp with signs of blunt-force trauma; swelling and ulcerations in her mouth consistent with bruising; dark purple bruising behind the ears; a ruptured eardrum; petechial bruising consistent with strangulation cutting off air supply; bruising on her upper left arm;  a long linear cut and three smaller superficial cuts on her lower left arm; nine superficial linear cuts on her right lower arm, with scab formation; a curved abrasion under her right armpit; eleven overlapping linear superficial cuts on her upper left thigh and same on her upper right thigh; a puncture wound on her left calf; a healing gunshot wound to her right calf, with burn marks around the entrance wound; twenty-seven crisscrossing linear superficial cuts on her back, along with seven puncture wounds; bruising on her right hip and side.  Trial Tr. vol. 2 at 7–43.

On the morning of April 6, 2015, Police arrested Lewis, and he was held without bond. Following a preliminary hearing on August 5, the matter was certified to the grand jury.  On August 17, the grand jury indicted Lewis for abduction in violation of Virginia Code § 18.2-47(A), maliciously shooting within an occupied building in violation of Virginia Code § 18.2-279 and shooting from a motor vehicle in violation of Virginia Code § 18.2-286.1.  Direct indictments were also issued for use of a firearm in the commission of abduction in violation

of Virginia Code § 18.2-53.1, aggravated malicious wounding in violation of Virginia Code § 18.2-51.2, and strangulation in violation of Virginia Code § 18.2-56.1.  CCR[1] at 100–106.

After twice requesting and receiving new appointed counsel, the matter finally came to trial on July 25 and July 26, 2016.  At the conclusion of the Commonwealth's evidence, Lewis's counsel moved to strike the evidence.  Trial Tr. vol. 2 at 63–106. The defense had two witnesses present to testify that Monica was using cocaine the whole weekend, a fact that she adamantly denied during cross examination.  The trial court found the proffered testimony irrelevant and in violation of the rule against collateral impeachment.  *Id.* at 107–151. Thereafter, Lewis decided to change his plea from "not guilty" to "no contest" on all charges, without the benefit of a plea agreement.  Following the full appropriate colloquy, the court accepted the change of plea and found Lewis guilty of all charges.  *Id.* at 153–169; CCR at 147–155.  The trial court ordered a presentence report and victim impact statement and set the matter for sentencing on December 27, 2016.

Following consideration of the presentence report, victim impact statement, and argument of counsel, the trial court sentenced Lewis to seven years for abduction, with four of those years suspended; 35 years for aggravated malicious wounding, with 22 of those years suspended; five years for strangulation, with two of those years suspended; seven years for malicious shooting within an occupied dwelling, with four of those years suspended; five years for shooting from a motor vehicle, with four of those years suspended; and the mandatory three-year sentence for use of a firearm in the commission of abduction.  In total, the sentence

---

[1] Citations herein are to the consolidated electronic record from the Pittsylvania County Circuit Court, Record Nos. CR15-485, 486, 487, 517, 518, and 519, abbreviated "CCR," using the page numbers on the bottom right corner of the pages in the court record.

imposed was 62 years, with 36 years suspended, leaving 26 years to serve.  CCR at 191–193. The trial court imposed an active sentence above the guidelines, which recommended a sentence between six years, nine months, and fifteen years, one month, with a midpoint of twelve years, seven months.  *Id.* at 194.

Lewis appealed his conviction and sentence to the Virginia Court of Appeals, challenging the court's evidentiary ruling that excluded the testimony of his two defense witnesses and challenging the above-guidelines sentence.  Noting that a plea of guilty or no contest disposes of all matters pertaining to guilt, leaving nothing to appeal, the court held that a conviction based upon such a plea waives all appeals except for jurisdictional issues and improper sentencing.  Based upon the record, in which Lewis stated, under oath, that he understood he was waiving his right to appeal by pleading no contest, the court found the plea to be intelligent and voluntary.  Because he knowingly and voluntarily pled no contest, the court held that his objection to the evidentiary ruling was waived.  Further, the court held that Lewis had not properly preserved an objection nor assigned error to the above-guidelines sentence and, even if he had, the guidelines are voluntary, and the court would not reverse a lawful sentence for being outside the guidelines.  *Id.* at 207–210.

Lewis's petition to the Supreme Court of Virginia was refused on May 29, 2018, for failing to assign error to a ruling of the Court of Appeals.  *Id.* at 206.  He did not file a petition with the United States Supreme Court.  On March 1, 2019, Lewis filed a state petition for habeas corpus in the Pittsylvania County Circuit Court, raising the same claims he raises in the

current § 2254 petition: ineffective assistance of counsel, a *Brady*[2] violation, and sufficiency of

the evidence to support the convictions.  The court denied his petition, finding that Lewis

failed to establish ineffective assistance of counsel on any of his claims and that his plea of no

contest waived the remaining claims.  HR[3] at 108–113.  Further, the remaining claims were

not raised in Lewis's direct appeal.  Lewis appealed the habeas denial to the Supreme Court of

Virginia, which denied his appeal on July 7, 2020, finding no reversible error in the record.

Va. S. Ct. R.[4] at 65.

On the same day, Lewis timely filed the current § 2254 petition, in which he raises the

following issues:

1.  Ineffective assistance of counsel:

    a.  Failing to subpoena his wife's medical records;

    b.  Failing to request DNA testing of the razors in his home;

    c.  Preventing Lewis from testifying;

    d.  Failing to interview Skylar Farthing, pawn shop employees, the neighbor, and

        others; and

    e.  Advising Lewis to plead no contest without benefit of an agreement.

---

[2] *Brady* violation refers to any failure of the prosecutor to disclose material, exculpatory information in the state's possession to the defense before trial, a due process right articulated by the Supreme Court in *Brady v. Maryland*, 373 U.S. 83 (1963).

[3] Citations to the electronic record of the state habeas case in Pittsylvania County Circuit Court, Record No. CL19-860, are abbreviated herein as "H.R.," using the page numbers in the bottom right corner of each page in the record.

[4] Citations to the record of the Supreme Court of Virginia in the combined cases of *Lewis v. Commonwealth*, Record No. 180051, and *Lewis v. Clarke*, Record No. 19103, are abbreviated "Va. S. Ct. R.," using the page numbers in the bottom left corner of each page.

2. Prosecutorial misconduct in violation of *Brady* for failing to disclose "known" drug use by the victim at the time of the alleged crime.

3. The Commonwealth's evidence was insufficient to support his convictions.

## II. Standard of Review and Limitations on Federal Habeas

A federal court may grant a petitioner habeas relief from a state court judgment "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Federal courts reviewing constitutional claims adjudicated on the merits in state court may grant relief on such a claim only if the state court's decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). A federal district court reviewing a § 2254(a) petition is also limited by the separate but related doctrines of exhaustion, procedural default, and independent and adequate state-law grounds. The standard of review and these procedural doctrines promote the principles of finality, comity, and federalism, recognizing a state's legitimate interests in enforcing its laws, preventing disruption of state judicial proceedings, and allowing states the first opportunity to address and correct alleged violations of a state prisoner's federal rights. *Coleman v. Thompson*, 501 U.S. 722, 730–31 (1991). When reviewing a state court's assessment of an ineffective assistance of counsel claim, federal review is "doubly deferential," because the deferential standard of review under the statute overlaps with the deferential standard under *Strickland v. Washington*, 466 U.S. 668, 687 (1984). *See Cullen v. Pinholster*, 563 U.S. 170, 190 (2011). In other words, the federal court is to afford "both the

state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, 571 U.S. 12, 15 (2013).

A.  Exhaustion

A habeas petitioner is required to exhaust his claims in state court before his claims can be considered in federal court. 28 U.S.C. § 2254(b)(1)(A). To exhaust his claims, a petitioner must present his federal constitutional claims on the merits to the highest state court before he is entitled to seek federal habeas relief. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). Further, the petitioner must present to the state court the same operative facts and the same controlling legal principles that he seeks to present to the federal court. *Duncan v. Henry*, 513 U.S. 364, 365–66 (1995); *Kasi v. Angelone*, 300 F.3d 487, 501–02 (4th Cir. 2002). Failure to do so "deprives[s] the state courts of an opportunity to address those claims in the first instance." *Coleman*, 501 U.S. at 732.

B.  Procedural Default

A separate but closely related issue is the doctrine of procedural default. If a state court has clearly and explicitly denied a petitioner's claim based on a state procedural rule that provides an independent and adequate ground for the state court's decision, that claim is procedurally defaulted for purposes of federal habeas review. *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998). A state procedural rule is independent if it does not depend on a federal constitutional ruling, and it is adequate if it is firmly established and regularly applied by the state court. *Yeatts v. Angelone*, 166 F.3d 255, 263–64 (4th Cir. 1998). A claim that has not been presented to the highest state court and would be procedurally barred as untimely or successive

if the petitioner tried to present the issue to the state court now is considered simultaneously exhausted and defaulted. *Bassette v. Thompson*, 915 F.2d 932, 936–37 (4th Cir. 1990).

C.  Overcoming Procedural Default

Before a federal habeas court will consider a procedurally defaulted claim, the prisoner must show both cause for the default and actual prejudice because of the claimed federal violation. *Coleman*, 501 U.S. at 750. Cause for procedural default requires the existence of some objective factor, external to the defense and not fairly attributable to the prisoner. *Id.* at 756–57. To show prejudice to overcome procedural default, a petitioner must show that the claimed violation worked to his "actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982).

## III.  Analysis of Claims

A.  Ineffective Assistance of Counsel

Because Lewis raised his claims for ineffective assistance of counsel before the highest court in Virginia by appealing his state habeas to the Supreme Court of Virginia, he has properly exhausted these claims and this court may reach the merits of the claim. As previously noted, however, § 2254(d) limits federal review to determining whether the state court's decision is an unreasonable application of law or unreasonable determination of facts. The last reasoned opinion in the case came from the Pittsylvania County Circuit Court's habeas decision, as the Supreme Court of Virginia summarily denied Lewis's petition for appeal. Summary denials of appeal without an opinion are presumed to be decisions on the merits of the claim. *Harrington v. Richter*, 562 U.S. 86, 99 (2011). On habeas review, a federal court is to "look through" the summary decision to the last court decision providing a rationale for the

merits decision and to presume that the state high court adopted the same reasoning. *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018); *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991). Accordingly, this court will assess the Pittsylvania County Circuit Court opinion for reasonable determination of facts and law.

On federal habeas review, the question is not whether "a federal court believes the state court's determination under the *Strickland* standard was incorrect, but whether the determination was unreasonable, a substantially higher threshold." *Knowles v. Mirazayance*, 556 U.S. 111, 123 (2009). "If this standard is difficult to meet, that is because it was meant to be." *Harrington*, 562 U.S. at 103. "Section 2254(d) codifies the view that habeas corpus is 'a guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Valentino v. Clarke*, 972 F.3d 560, 581 (4th Cir. 2020) (quoting *Harrington*, 562 U.S. at 102–03). Thus, "surmounting *Strickland*'s high bar is never an easy task," but "establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Harrington*, 562 U.S. at 105.

The habeas court cited the appropriate law for ineffective assistance of counsel claims. To prevail on a claim of constitutional ineffective assistance of counsel, a petitioner must show that: (1) counsel's performance was so deficient that she was not functioning as counsel guaranteed by the Sixth Amendment; and (2) the deficient performance prejudiced the defense. Petitioner must establish both prongs of this deferential test. *Strickland*, 466 U.S. at 687. The state habeas court held that Lewis failed to establish the prejudice prong. Because Lewis pled no contest to the charges, which is the functional equivalent to a plea of guilty (citing *Commonwealth v. Jackson*, 255 Va. 552, 555 (1998)), to establish prejudice, Lewis must

show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart,* 474 U.S. 52, 59 (1985). The state habeas court determined as a factual matter that the evidence did not support such a finding. Because Lewis completed a written questionnaire, answered the trial judge's questions under oath, and heard the Commonwealth's evidence before changing his plea to no contest, this court finds nothing unreasonable in the state habeas court's determination of facts.

Although the state court did not address the performance prong of Lewis's claims— and was not required to do so because the prejudice prong had not been met—the court is compelled to note that the record contradicts many of Lewis's allegations of deficient performance. For example, Lewis's prior defense counsel attempted to subpoena Monica's medical records; under the Rules of Court, leave of court is required to issue a subpoena for documents in criminal cases. Counsel moved for leave of court, which was denied on the basis that the records were irrelevant. CCR at 117–120. Trial counsel was not required to attempt the same motion which had already been denied.

The record also establishes that Lewis acknowledged in writing and orally to the court that he knew he had a right to testify. *Id.* at 290; Tr., 12, July 13, 2016. Finally, Lewis represented to the trial court that it was his decision to change his plea from not guilty to no contest. Given that the Commonwealth had already put on its evidence and Lewis had the benefit of seeing how the evidence came across to the jury, his choices were to change his plea or take his chance with the jury. Having already expended the time and effort necessary to bring the case to trial, the Commonwealth's attorney had no interest in offering a plea

"bargain," nor was he required to do so.   Because juries impose the sentence in the Commonwealth of Virginia and juries have no power to impose concurrent sentences or to suspend portions of a sentence, *see Harrison v. Commonwealth*, No. 1992-03-1, 2004 WL 2513915, slip op. at 1 (Va. Ct. App. 2004), the *minimum* sentence that a jury would have been able to recommend if convicting Lewis of all charges would have been 28 years, and the maximum sentence the jury might have imposed would have been life plus 38 years.   Given the options available to Lewis at that time, the court would be hard-pressed to find anything deficient about counsel's advice.

Because the state habeas court's determination that Lewis failed to prove prejudice is a reasonable application of law and determination of facts, the court will dismiss the claims for ineffective assistance of counsel.

B.   Alleged *Brady* Violation

The state habeas court held that Lewis waived this claim by pleading no contest.   Under Virginia law, a defendant waives all defenses, other than those that are jurisdictional, when he pleads no contest.   *Peyton v. King* 169 S.E.2d 569, 571 (1969).   This basis for denying Lewis's claim is an independent and adequate state law ground, tantamount to procedural default.   As such this claim could be treated as procedurally barred.

The state habeas court also found, however, that Lewis's claim was not supported by the facts in the record.   The prosecution represented to the court that no drug test was found in the medical records of Monica's treatment for her injuries from this offense, and the medical records had been turned over to defense counsel.   Counsel thoroughly questioned the forensic nurse examiner, who testified that she was unaware of any such test.   The state habeas court

concluded that there is no evidence that a drug test of Monica even exists.  A federal habeas court must presume the correctness of the state court's factual findings unless the petitioner can overcome that presumption by clear and convincing evidence.  28 U.S.C. § 2254(e).  Lewis has failed to offer even a scintilla of evidence to overcome the factual findings of the state habeas court.  Without any proof of a drug test's existence, Lewis certainly cannot prevail on a claim that the prosecutor failed to turn over the results.  And without such proof, Lewis cannot demonstrate any prejudice resulting from this defaulted issue.  Therefore, the court will dismiss this claim.

## C. <u>Sufficiency of the Evidence</u>

The state habeas court found that Lewis defaulted his sufficiency-of-evidence claims, citing the rule in *Slayton v. Parrigan*, 205 S.E.2d 680 (Va. 1974).  Noting that habeas corpus is not a substitute for the appeals process, the court in *Slayton* held that non-jurisdictional claims that could have been raised on direct appeal, but were not, have been defaulted.  *Id.* at 682. The Fourth Circuit has long recognized the rule in *Slayton* as an independent and adequate state ground for a denial of a state habeas petition.  *See Prieto v. Zook*, 791 F.3d 465, 469 (4th Cir. 2015).  As previously discussed, a matter procedurally defaulted in state court under an independent and adequate state ground is also defaulted for purposes of federal habeas review. *Breard*, 134 F.3d at 619.  This court can consider these claims on the merits only if Lewis can show both cause and prejudice for his procedural default.  Lewis has not offered any cause for his procedural default.  Considering each of his claims regarding sufficiency of the evidence, the court concludes that Lewis cannot show prejudice, either.

To prevail on a constitutional claim that the evidence is insufficient to support a conviction, Lewis must demonstrate that, considering the evidence in the light most favorable to the government, no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). As discussed below, Lewis's claims of insufficiency are without merit because there is ample evidence to support each element of his crimes.

1. Aggravated Malicious Wounding

Lewis alleges that the evidence was insufficient to support a conviction for aggravated malicious wounding because there was insufficient proof of a "significant and permanent physical impairment." Br. in Supp. of Pet. at 17, ECF No. 1-1. While correct in asserting that a significant and permanent physical impairment must be shown, Lewis is mistaken in his assertion that Monica's injuries were not significant or permanent. As noted by the trial court in overruling the motion to strike the evidence, Monica still had a visible scar on her leg from the gunshot wound. Moreover, because of the ruptured eardrum, Monica had difficulty hearing out of that ear and had permanent restrictions on her activities to avoid further harm.

Lewis argues that surgery can repair the perforated eardrum and improve the hearing loss. He further argues that the only medical evidence of the ruptured eardrum is from the forensic nurse examiner. The testimony of the nurse examiner, who qualified as an expert in the field of forensic nursing, is competent evidence of the medical condition. Monica testified that the rupture in the drum had healed, but she still had hearing loss. The Virginia Court of Appeals has stated that, "[t]o prove an injury is permanent, the Commonwealth need not present definitive testimony that a victim's injuries will never improve, but instead can leave it

to the common sense of the jury to determine if the injuries are permanent." *Lamm v. Commonwealth*, 688 S.E.2d 295, 298–99 (Va. Ct. App. 2010). In *Lamm*, the victim had lost her sense of taste and smell; at the time of trial, five months after the injuries, she had not recovered those senses. The doctor testified that he could not say whether those senses would return. Even with that testimony, the jury found the defendant guilty of aggravated malicious wounding.

Further, the ruptured eardrum is not the only permanent injury Monica suffered. As the court noted in *Lamm*, a physical impairment is "any physical condition, anatomic loss, or *cosmetic disfigurement*." *Id.* at 298. Citing *Lamm*, the appellate court also upheld an aggravated malicious wounding conviction in *Kersey v. Commonwealth*, Record No. 2567-10-1, 2012 WL 2737808 (Va. Ct. App. 2012) (unpublished). The victim in *Kersey* was stabbed in the chest, causing lung damage and a permanent scar. *Id.* at *1. He required an eleven-day hospital stay and still used a nebulizer to track his lung function but testified at trial that his lungs were fine. He had a one-inch scar on his chest.

The scar on Monica's calf from the gunshot wound is as permanent of a cosmetic injury as the scar on the victim's chest in *Kersey*. Because the evidence was sufficient for a jury to find significant permanent injury, Lewis cannot demonstrate prejudice to overcome his default of this claim.

2. Strangulation

Lewis alleges that the evidence failed to establish that he impeded Monica's blood circulation or respiration, essential elements of strangulation. However, nurse examiner Terrill, an expert in diagnosing signs of strangulation, testified that the petechial bruising on

Monica's head and ears were indications of the force of strangulation, particularly that "[w]hen a person's oxygen supply is cut off by cutting off the blood vessels and your airway, it causes that external pressure, that external pressure will pop the vessels.  It's also popping vessels in the brain as well."  Trial Tr. vol. 2 at 23.  That is sufficient evidence that the strangulation cut off both Monica's respiration and blood flow, enough to create the pressure that resulted in the bruising.  This claim is devoid of merit, and Lewis cannot show any prejudice to overcome his procedural default.

### 3.   Display of a Firearm in Commission of Abduction

Lewis alleges that the evidence does not show that he abducted Monica or used a gun to restrain her liberty.  In particular, he states there was no evidence that he ever told Monica she could not leave or that he used the gun to keep her from leaving anytime during the Easter weekend.  This assertion assumes that the evidence must be direct and explicit, which is not the case.  Circumstantial evidence, as well as inferences that can be drawn from direct evidence, are sufficient to prove any element of a crime, and they are entitled to as much weight as one would give to direct evidence.  *Coleman v. Commonwealth*, 307 S.E.2d 864, 876 (Va. 1983).  The court could easily have concluded that Lewis restrained Monica's liberty by using or displaying a gun when he sat on the bed with his shotgun facing into the bathroom after shooting a shot into the bathroom past her.  The court could also have concluded that he used a gun to restrain her liberty when he fired pistol shots near her head before using her body as a dart board.  Because this claim is completely without merit, Lewis cannot show prejudice sufficient to overcome his default.

- 17 -

4.  Abduction

Lewis contends that the evidence fails to establish that he abducted Monica because "she was free to leave at any time," and the only reason she did not leave was because she thought he would take the kids. Br. in Supp. of Pet. at 32–33.  This argument assumes that the abduction for which he was convicted lasted the entire three-day weekend.  That assumption is false.  If the evidence establishes that Lewis detained Monica for any period of time, by force, intimidation, or deception, with the specific intent to deprive her of her liberty, that is sufficient to constitute the crime under the statute.  Simply put, the detention at issue did not have to last for anything close to three days.

As indicated in above, there are at least two times that the court could have determined from the evidence at trial that Lewis detained Monica by intimidation with the intent to deprive her of her liberty.  A person is detained anytime she is required to remain in a certain location against her will, even if that location is her own home.  *Commonwealth v. Herring*, 758 S.E.2d 225, 233–34 (Va. 2014).  The evidence of Lewis's behavior and physical conduct towards Monica over that Easter weekend supports a finding of either force or intimidation or both.  Intent, being a state of mind, can only be proven by inferences from a person's conduct or statements.  *Fletcher v. Commonwealth*, 849 S.E.2d 594, 600 (Va. Ct. App. 2020).  The act of pointing his shotgun in the direction of the bathroom while his wife was hiding behind the half-wall could certainly support an inference of intent to deprive Monica of her liberty.  In a similar vein, forcing her to sit on an ottoman and then firing shots that passed on either side of her head unquestionably supports an intent to deprive her of liberty.  From all this, a reasonable factfinder could (and undoubtedly should) infer that "no normal person would

willingly endure" such treatment and thus conclude that Lewis intended to deprive her of her liberty and subject her to his control. *Scott v. Commonwealth*, 323 S.E.2d 572, 575 (Va. 1984) (holding that intent to make the victim watch him "blow his brains out" was equivalent to intent to deprive of liberty).

In sum, this  claim lacks any merit, and Lewis has not shown prejudice to overcome his procedural default.

### 5.   Shooting in a Motor Vehicle

Lewis argues that the evidence fails to prove he intended to shoot his gun in the car; rather, because Monica was not sure if it was intentional or accidental, the evidence was insufficient to support the charge.  The court , however, was free to consider all the evidence to determine Lewis's intent, not just Monica's testimony. *Kersey*, 2012 WL 2737808 at *2. Even if one piece of evidence alone is not sufficient, the combination of different pieces of evidence may lead a reasonable mind  to one ineluctable conclusion. *Fletcher*, 849 S.E.2d at 600.  Evidence that Lewis was holding the pistol with the barrel against Monica's leg, that he said he was going to shoot her in the leg, and that he laughed after he shot her, when combined, are sufficient to prove an intentional discharge of the weapon.  Because this claim lacks merit, Lewis has not demonstrated prejudice to overcome his procedural default.

### 6.   Shooting within an Occupied Building

Finally, Lewis argues that no one was endangered by the discharge of a weapon in the house because no one was injured, and he was not actually shooting at anyone inside the home. Lewis's argument misunderstands the offense.  Virginia Code § 18.2-279 represents the legislature's determination that "handling an instrumentality as inherently dangerous as a

loaded firearm in an occupied building, with one's finger on the trigger, is criminally negligent if discharge results in a manner as to endanger others in the building." *Bryant v. Commonwealth*, 811 S.E.2d 250, 254 (Va. 2018).  The court has also held that a person need not be injured by the gunshot and the gun need not be pointed at someone for shooting a gun inside a building to endanger occupants.  *Kirby v. Commonwealth*, 570 S.E.2d 832, 835 (Va. 2002) (upholding conviction for maliciously discharging firearm in an occupied building when the defendant fired a gun from inside the residence to the outside, breaking a window, while his wife was seated on the sofa behind and to the left of him).  Thus, this claim is without merit and fails to demonstrate prejudice to overcome procedural default.

Having found that Lewis has not shown prejudice to overcome his default of the claims alleging insufficiency of the evidence, the court must dismiss these claims.

## IV. Conclusion

For the reasons discussed above, the court will grant the respondent's motion to dismiss.

Further, when issuing a final order adverse to a § 2254 petitioner, the court must issue or deny a certificate of appealability. Fed. R. Gov. § 2254 Cases 11(a).  A certificate of appealability may issue only if the movant has made a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).  The movant must show that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.  *Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000).  In the context of a procedural ruling, the movant must demonstrate both that the dispositive

procedural ruling is debatable and that the action states a debatable claim of the denial of a constitutional right. *Gonzales v. Thaler*, 565 U.S. 134, 140–41 (2012). Lewis falls well short of this exacting standard.

The Clerk is directed to send copies of this memorandum opinion and accompanying order to all counsel of record.

**ENTERED** this 20th day of April, 2021.

          */s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE